IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHRISTOPHER RUIZ-HERRERA,
and TAMMY MICHELE-WILLIAMS,


        Plaintiff,


v.                                       CIVIL ACTION NO.
                                         1:12-cv-0194-JEC

ERIC HOLDER, Attorney General
of the United States, JANET
NAPOLITANO, Secretary,
Department of Homeland
Security, HILLARY RODHAM
CLINTON, Secretary of State,
U.S. Department of State,
THOMAS G. ROGAN, U.S. Consul
General in Ciudad Juarez,
LYNNE P. SKEIRIK, Director,
National Visa Center,
Department of State, and
ALEJANDRO MAYORKAS, Director,
U.S. Citizenship and
Immigration Services,,

        Defendants.

## ORDER & OPINION

     This case is before the Court on defendants' Motion to Dismiss [5]. The Court has reviewed the record and the arguments of the parties and, for the reasons set out below, concludes that defendants' Motion [5] should be **GRANTED**.

**BACKGROUND**

This case arises from the denial of plaintiff Christopher Ruiz-Herrera's Immigrant Visa Application by the United States Citizenship and Immigration Services ("USCIS"). (Compl. [1] at 2.) Herrera is a citizen of Mexico. (*Id*. at Ex. 2-B.) In 1999, Herrera married plaintiff Tammy Michele-Williams, a United States citizen. (*Id*. at Ex. 2-D.) In May, 2010, Williams submitted an I-130 Immediate Relative Petition to the USCIS on behalf of Herrera. (*Id*. at ¶ 15.) Submission of the I-130 is the first step in acquiring an immigrant visa for the spouse of a US citizen.[1] 8 U.S.C. § 1154. The USCIS approved Williams' I-130 Petition in November, 2010. (*Id.*)

Plaintiffs subsequently submitted an Application to obtain an Immigrant Visa for Herrera to the National Visa Center. (Compl. [1] at ¶ 17.) The Application was sent to the Immigrant Visa Section of the US Consulate in Ciudad Juarez for processing. (*Id*. at Exs. 3-4.) Prompted by one of the questions on the Application, Herrera disclosed that he had been "charged for drugs in 1995" but that the "charges and case [were] dismissed." (*Id*. at Ex. 2-B.) The US Consulate requested all available documents related to the 1995

---

[1] After the I-130 is approved, a consular official in the country of origin must approve the applicant's visa. 8 U.S.C. at § 1201(a). Once the immigrant visa is obtained and other requirements are met, the applicant may begin the naturalization process. *Id*. at § 1430.

2

incident and instructed Herrera to schedule a consular interview. (*Id.* at ¶¶ 17, 18 and Exs. 3, 4.)  In response, plaintiffs submitted to the Consulate a copy of the police report concerning the 1995 arrest and a 2001 order from a state court in Denver, Colorado dismissing the case.  (*Id.* at ¶ 19 and Ex. 5.)

On June 28, 2011 the Consulate sent plaintiffs a letter denying Herrera's Visa Application.  (Compl. [1] at ¶ 20 and Ex. 6.)  The stated reason for the denial was that the Consulate had "reason to believe" that Herrera had been involved in drug trafficking.  (*Id.*)  The Consulate's decision was presumably based on Herrera's 1995 drug arrest.  Pursuant to the Immigration and Nationality Act ("INA"), an applicant is ineligible for an immigrant visa if a consular officer "knows or has reason to believe" that the applicant "is or has been an illicit trafficker in any controlled substance" or "is or has been a knowing aider, abettor, assister, conspirator, or colluder with others" in such trafficking.  8 U.S.C. § 1182(a)(2)(C)(I).

Plaintiffs filed this lawsuit in an attempt to obtain judicial review of the Consulate's decision on Herrera's visa. (Compl. [1] at 8.)  In their complaint, plaintiffs assert claims against defendants under the Declaratory Judgment Act, 28 U.S.C. § 2201, the Administrative Procedures Act, 5 U.S.C. § 701, and the Mandamus Act, 28 U.S.C. § 1361.)  (*Id.* at 3.)  On the basis of those claims, plaintiffs seek injunctive and declaratory relief compelling

3

defendants to: (1) find that there is insufficient "reason to believe" that Herrera is or was a drug trafficker and (2) issue an Immigrant Visa to Herrera. (*Id.* at 2.) Defendants have filed a motion to dismiss the complaint for lack of jurisdiction under Federal Rule 12(b)(1) and for failure to state a claim under Federal Rule 12(b)(6). (Defs.' Mot. to Dismiss [5].)

## DISCUSSION

### I. APPLICABLE STANDARDS

#### A. Rule 12(b)(1)

"'Federal courts are courts of limited jurisdiction.'" *Federated Mut. Ins. Co. v. McKinnon Motors, LLC,* 329 F.3d 805, 807 (11th Cir. 2003)(quoting *Burns v. Windsor Ins. Co.,* 31 F.3d 1092, 1095 (11th Cir. 1994)). A party invoking federal jurisdiction thus "bears the burden of establishing its existence." *Parker v. Scrap Metal Processors, Inc.,* 386 F.3d 993, 1003 (11th Cir. 2004). That party must allege facts sufficient to show jurisdiction and, when the Court's jurisdiction is appropriately challenged, support those facts by competent evidence. *McNutt v. Gen. Motors Acceptance Corp. of Indiana, Inc.,* 298 U.S. 178, 189 (1936).

As suggested by *McNutt*, the Court may consider evidence outside of the pleadings to determine whether it has jurisdiction. *See Goodman ex rel. Goodman v. Sipos,* 259 F.3d 1327, 1332 (11th Cir. 2001)(citing *Smith v. GTE Corp.,* 236 F.3d 1292, 1299 (11th Cir.

4

2001)). To that end, the Court has the power to grant a Rule 12(b)(1) motion on any of three separate bases: "(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the Court's resolution of disputed facts." *McElmurray v. Consol. Gov't of Augusta-Richmond Cnty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)(citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)). In a case involving disputed facts, however, it may be necessary to provide an opportunity for discovery and a hearing "that is appropriate to the nature of the motion to dismiss." *Id*.

In this case, the Court is able to decide the jurisdiction question without resolving any factual disputes. For purposes of the motion to dismiss, the Court assumes all of the allegations in the complaint are true and construes all facts in favor of plaintiffs. Accordingly, discovery and a hearing are not necessary.

B. Rule 12(b)(6)

In deciding a motion to dismiss for failure to state a claim, the Court assumes that all of the allegations in the complaint are true and construes the facts in favor of the plaintiff. *Randall v. Scott,* 610 F.3d 701, 705 (11th Cir. 2010). So viewed, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim [for] relief that is plausible on its face'" in order to survive a motion to dismiss under Federal Rule 12(b)(6). *Ashcroft v.*

5

*Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is "facial[ly] plausib[le]" when it is supported with facts that "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

## II.  CONSULAR NONREVIEWABILITY

Defendants cite the consular nonreviewability doctrine in support of both their jurisdictional challenge and their Rule 12(b)(6) argument.  (Defs.' Br. in Supp. of Mot. to Dismiss ("Defs.' Br.") [5] at 1.)  The consular nonreviewability doctrine reflects the longstanding principle that national immigration policy is entrusted to the political branches of government, and is largely immune from judicial inquiry and interference.  *See United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950)("[w]hatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned") and *The Kuei Liu v. INS,* 645 F.2d 279, 285 (5th Cir. 1981)("Nor is it within the ambit of our review to consider the actions of the American Consul in . . . Canada").[2]  The doctrine holds that "a consular official's decision to issue or withhold a visa is not subject to judicial review."  *De Castro v.*

---

[2] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981)(en banc).  *Te Kuei Liu* was decided on May 15, 1981.

6

*Fairman*, 164 Fed. App'x 930, 932 (11th Cir. 2006). It has been applied by the Supreme Court, and by every Circuit Court that has been asked to review the visa determination of a US consul. *Id.* at 932-33 (collecting consular nonreviewability cases from the Supreme Court and the 2nd, 5th, 8th, 9th and D.C. Circuits).

Assuming all of the allegations in the complaint are true, there is no question that the consular nonreviewability doctrine applies to this case. The basis for the claims asserted in the complaint is the alleged wrongful finding by the US Consulate in Mexico of "reason to believe" that Herrera is or was a drug trafficker, and its denial of Herrera's Immigrant Visa Application on that ground. (Compl. [1] at 2.) As relief, plaintiffs seek a declaration from the Court that Herrera is eligible for an Immigrant Visa as a matter of law and an order compelling the US Consulate to issue a Visa to Herrera. (*Id.*) Numerous courts, including the Eleventh Circuit and the pre-split Fifth Circuit, have rejected similar claims on jurisdictional grounds pursuant to the consular nonreviewability doctrine. *See De Castro,* 164 Fed. App'x at 932 and *The Kuei Liu,* 645 F.2d at 285.

    A.   <u>Review Under The APA Is Unavailable In This Case</u>.

In spite of the above well-settled authority, plaintiffs contend that the Court retains jurisdiction to review Herrera's visa denial under the Administrative Procedures Act ("APA"). (Pls.' Resp. to Defs.' Mot. to Dismiss ("Pls.' Resp.") [6] at 2.) Although the APA

7

generally provides for judicial review of final agency determinations, the Act expressly precludes review if the operative statute disallows it or if the action at issue is committed to agency discretion by law. 5 U.S.C. § 701(a)(1) and (2). The Act further provides that the right to judicial review of agency action may be limited by preexisting legal or equitable doctrines. 5 U.S.C. § 702.

Courts have uniformly held that immigrant visa denials lie within one of these categories of unreviewable agency decisions under the APA. *See Haitian Refugee Ctr., Inc. v. Baker*, 953 F.2d 1498, 1505-06 (11th Cir. 1992)("judicial review under the APA is foreclosed because the relevant provisions of the INA provide the sole and exclusive avenue for judicial review") and *Saavedra Bruno v. Albright*, 197 F.3d 1153, 1158-59 (D.C. Cir. 1999)(dismissing a claim seeking judicial review of a visa denial under the APA). As the D.C. Circuit Court explained in *Saavedra Bruno*, courts have generally inferred that the immigration laws "preclude judicial review" of consular visa decisions. *Saavedra Bruno,* 197 F.3d at 1160. Alternatively, courts have concluded that the doctrine of consular nonreviewability, which predates the passage of the APA, is one of the "limitations on judicial review" that is expressly preserved in the APA. *Id.*

Contrary to the suggestion of plaintiffs, passage of the Homeland Security Act of 2002 does not alter this analysis or even

8

arguably give rise to a right of judicial review under the APA. Among other things, the Homeland Security Act authorizes the Secretary of Homeland Security and the Secretary of State to intervene in certain visa decisions. 6 U.S.C. § 236(b)(1) and (c)(1). Plaintiffs thus cite the Act as evidence that the authority to issue visas is not exclusive to consular officers. (Pls.' Resp. [6] at 2.) Be that as it may, the Homeland Security Act does not authorize courts to intervene in or review consular visa decisions. Moreover, the Act expressly preserves the autonomy of consular officers with respect to visa denials. *Id.* at (b)(1). To that end, the Act states that the Secretary "shall not have authority to alter or reverse the decision of a consular officer to refuse a visa to an alien." *Id.*

    B.    The *Mandel* Exception Is Inapplicable.

Plaintiffs also urge the Court to apply the narrow exception to consular nonreviewability that has emerged from the Supreme Court's decision in *Kleindienst v. Mandel*, 408 U.S. 753 (1972).[3] The *Mandel*

---

[3] Plaintiffs apparently concede that there is no factual or legal basis for applying any of the other limited exceptions to consular nonreviewability. *See Martinez v. Bell*, 468 F. Supp. 719, 725-26 (D.C.N.Y. 1979)(holding that the court could examine the constitutionality of an underlying immigration statute without violating the consular nonreviewability doctrine) and *Patel v. Reno*, 134 F.3d 929, 933 (9th Cir. 1998)(granting judicial review where a US consulate refused to take any action on a visa application).

9

Court reiterated that "an unadmitted and nonresident alien . . . ha[s] no constitutional right of entry to this country as a nonimmigrant or otherwise." *Id.* at 762. Nevertheless, the Court indicated that limited review of a consul's decision to deny a visa may be available where the decision implicates the constitutional rights of a US citizen.[4] *Id.* at 769-70. Where applicable, *Mandel* authorizes a court to ensure that a visa denial is based on a "facially legitimate and bona fide reason." *Id.*

Based on the allegations in the complaint, the *Mandel* exception does not apply to this case. The Court can infer from the complaint that plaintiff Williams is a US citizen. (Compl. [1] at ¶ 15.) However, Williams does not allege in the complaint that her constitutional rights were violated by Herrera's visa denial. Rather, plaintiffs allege that the visa denial exacted generalized harms on both Williams and Herrera such as "grief, hardship, potential loss of work authorization, [and] loss of travel authorization." (*Id.* at ¶ 13.)

Plaintiffs suggest in their response brief that Herrera's visa denial impinges on Williams' constitutionally protected right to marry. (Pls.' Resp. [6] at 4.) The Due Process Clause protects a

---

[4] The plaintiffs in *Mandel* were US citizens. *Mandel,* 408 U.S. at 756. They claimed that the exclusion of a Communist Belgian citizen violated their First Amendment rights. *Id.* at 759-60.

10

citizen's "freedom of personal choice in matters of marriage and family life." *Cleveland Bd. of Educ. v. LaFleur,* 414 U.S. 632, 639-40 (1974). But numerous courts have held that neither deportation nor denial of a spouse's immigrant visa infringes upon that freedom. *See Jathoul v. Clinton,* 880 F. Supp. 2d 168, 171 (D. D.C. 2012) (collecting cases from the 2nd, 6th and D.C. Circuits). These courts have reasoned that, while an American citizen has the constitutional right to marry whomever she chooses, she does not have a constitutional right to have that person live in the United States. *Bangura v. Hansen*, 434 F.3d 487, 496 (6th Cir. 2006)("'[t]he Constitution does not recognize the right of a citizen spouse to have his or her alien spouse remain in the country'")(quoting *Almario v. Att'y Gen.,* 872 F.2d 147, 151 (6th Cir. 1989)). *See also Burrafato v. U.S. Dep't of State*, 523 F.2d 554, 555 (2d Cir. 1975)("no constitutional right of a citizen spouse is violated by deportation of his or her alien spouse").[5]

The Eleventh Circuit has indicated its agreement with the above cases, albeit in an unpublished decision. *De Castro v. Fairman,* 164

---

[5] *But see Bustamante v. Mukasey*, 531 F.3d 1059, 1063 (9th Cir. 2008)(applying *Mandel* review to a consul official's decision to deny a spousal immigrant visa, but upholding the decision as "facially legitimate and bona fide"). The Court notes that in *Bustamante,* the Ninth Circuit accepted the plaintiff's constitutional allegation at face value, rather than analyzing whether her spouse's visa denial actually implicated any of the plaintiff's constitutional rights. *Id.*

11

Fed. App'x 930, 933 (11th Cir. 2006). In *De Castro*, the Circuit Court rejected the spousal due process argument advanced by plaintiffs in this case. *Id.* Moreover, the Court is persuaded by the reasoning of cases like *Jathoul* and *Bangura*. Although Herrera's exclusion from the United States may impose burdens on plaintiffs' marriage, it does not "destroy the legal union which the marriage created." *Jathoul,* 880 F. Supp. 2d at 172 (citing *Swartz v. Rogers,* 254 F.2d 338, 339)(D.C. Cir. 1958)). As such, there is no basis for reviewing Herrera's visa denial under *Mandel*.

Even assuming Williams' constitutional rights were implicated, plaintiffs have not alleged a plausible claim for relief under *Mandel*. *See Iqbal*, 556 U.S. at 678. As discussed, *Mandel* review is extremely limited. *Mandel*, 408 U.S. at 769. A consulate's decision to deny an immigrant visa will be upheld under *Mandel* as long as the decision is based on a "facially legitimate and bona fide" reason. *Id.  See also Gonzalez v. Reno*, 212 F.3d 1338, 1354 (11th Cir. 2000)(suggesting that a "legitimate and bona fide" review is more lax than the review required by the "arbitrary, capricious, or [] abuse of discretion" standard). It is apparent from the complaint and its exhibits that Herrera's visa denial meets both requirements.

Plaintiffs acknowledge in the complaint that Herrera's visa was denied because the US Consulate determined that there was "reason to believe" Herrera is or was a drug trafficker. (Compl. [1] at 2.)

12

That clearly is a facially legitimate reason. The INA expressly designates as inadmissible any visa applicant whom the consul "knows or has reason to believe . . . is or has been an illicit trafficker in any controlled substance." 8 U.S.C. § 1182(a)(2)(C)(I).

The exhibits to the complaint further show that the denial was bona fide. In his visa application, Herrera disclosed that he had been arrested in 1995 on a drug charge. (Compl. [1] at Ex. 2-B.) Related documents, which were provided to the Consulate, show that the arrest occurred while Herrera was in the United States on a tourist visa, traveling on a Greyhound bus from Los Angeles to Chicago. (*Id*. at Ex. 5.) During a stop in Denver, Colorado, a police officer conducted a routine search of the bus's luggage with a drug-sniffing dog. (*Id*.) The dog alerted to Herrera's bag. (*Id*.) The officer conducting the search connected the bag to Herrera via the bag number and asked Herrera for his name. (*Id*.) Herrera said his name was "Chris Estevez"--a falsehood that the officer discovered after inspecting Herrera's photo identification. (Compl. [1] at Ex. 5.) When police subsequently searched Herrera's bag, it was found to contain approximately half a pound of methamphetamine. (*Id*.)

Herrera claims that the methamphetamine found in his bag in 1995 was placed there by a traveling companion, and that he never has been involved in drug trafficking. (Pls.' Resp. [6] at 5.) However, Herrera does not explain why he provided a false name to his

13

arresting officer or why he was traveling from Los Angeles to Chicago with a companion who was transporting methamphetamine. More generally, plaintiffs fail to allege that the consular officer who processed Herrera's visa application did not in good faith believe the information he had. To prevail under *Mandel*, it is not enough to simply allege that the consular official's information was incorrect, as plaintiffs have done here. *Bustamante*, 531 F.3d at 1062-63 (upholding an immigrant visa denial as facially legitimate and bona fide).

Herrera also points out that the drug charges against him were dismissed. (*Id.*) But the dismissal order does not explain why the charges were dismissed. (Compl. [1] at Ex. 5.) And in any case, a conviction is not necessary to support the consul's decision under the INA. All the statute requires is that the consular officer have "reason to believe" that the applicant is or was involved in drug trafficking. 8 U.S.C. § 1182(a)(2)(C)(I). The documents reviewed by the Consulate were sufficient in that regard.[6]

---

[6] *Garces v. U.S. Att'y Gen.*, 611 F.3d 1337 (11th Cir. 2010) is inapposite. Plaintiffs cite the case for the proposition that one drug arrest cannot be grounds for the exclusion of an alien. (Pls.' Resp. [6] at 6.) However, the Court in *Garces* court was reviewing a BIA decision to deport a foreigner who had lived in this country for nearly three decades, rather than a Consul's decision to deny an immigrant visa. The applicable standard in *Garces* was whether the BIA's decision was "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1346. A "facially legitimate and bona fide" review under *Mandel* is

14

**CONCLUSION**

Based on the facts alleged in the complaint, the consular nonreviewability doctrine precludes the Court's review of Herrera's visa application.  There is no factual or legal basis for applying any of the limited exceptions to the doctrine in this case.  Accordingly, defendant's motion to dismiss [5] is **GRANTED**.  The clerk is directed to **DISMISS** and **CLOSE** this action.


SO ORDERED, this 15th day of MARCH, 2013.


                                    /s/ Julie E. Carnes
                                    JULIE E. CARNES
                                    CHIEF UNITED STATES DISTRICT JUDGE

---

more deferential and constrained.

15